UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA ALDRIDGE,

      Plaintiff,

v.

CITY OF WARREN, COLIN MCCABE,
and KIMBERLY TEOLIS, in their official
and individual capacities,

      Defendants.

Case No. 5:15-cv-12366
Hon. Judith E. Levy
Mag. Judge Elizabeth A. Stafford

| | |
|---|---|
| CHRISTOPHER TRAINOR & ASSOC.<br>CHRISTOPHER J. TRAINOR (P42449)<br>AMY J. DEROUIN (P70514)<br>SHAWN C. CABOT (P64021)<br>Attorneys for Plaintiff<br>9750 Highland Road<br>White Lake, MI 48386<br>(248) 886-8650<br>amy.derouin@cjtrainor.com<br>shawn.cabot@cjtrainor.com | BERRY MOORMAN P.C.<br>MARK STRAETMANS (P29158)<br>RANDOLPH T. BARKER (P62604)<br>ANDREA M. PIKE (P74755)<br>Attorneys for Defendants<br>535 Griswold, Suite 1900<br>Detroit, MI 48226<br>(313) 496-1200<br>mstraetmans@berrymoorman.com<br>rbarker@berrymoorman.com<br>apike@berrymoorman.com |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)
## OR ALTERNATIVELY FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56

Defendants, City of Warren, Colin McCabe, and Kimberly Teolis (collectively "Defendants"), through their attorneys, Berry Moorman P.C., move for dismissal of the Plaintiff's Complaint, pursuant to FRCP 12(b)(6) and FRCP 56. In support of their motion, Defendants state as follows:

1.      Plaintiff commenced this litigation on July 1, 2015.

2.      In his Complaint, Plaintiff alleges that Defendants Colin McCabe and Kimberly Teolis, in violation of 42 U.S.C. § 1983, used excessive force while arresting Plaintiff on July 5, 2013. He also sues Defendant City of Warren (the "City"), alleging

generally that the City permitted unidentified customs, policies, and/or practices that resulted in a violation of Plaintiff's rights.

3.    Specifically, Plaintiff alleges that while he was walking to his usual bus stop on the morning of July 5, 2013, Officers McCabe and Teolis began to harass him without cause, and then allegedly began to beat him before ultimately taking him to the City's jail.  Plaintiff claims to have suffered injuries to his face as a consequence.

4.    The evidence, which includes scout car video, 911 audio, case reports, Warren Jail records, and declarations from eye-witnesses, belies Plaintiff's allegations and blatantly contradicts those claims.  That uncontroverted evidence establishes the following:

a.    A Warren resident called 911 because she had been awakened in the early-morning hours of July 5, 2013 by her dog barking and by an apparently-intoxicated individual who was pounding on the side entry door of her home, trying to get into the house.  Exhibit 1, *Audio Recording of 911 Call*; Exhibit 2, *Declaration of John Barnes*, ¶ 5(b) (authenticating 911 Audio), Exhibit 3, *Declaration of Sharon Bousquette*, ¶¶ 4, 5.

b.    The person trying to get into the home, and who was not known to any of the home's occupants, was calling for someone who did not reside there, looked disheveled, was repeatedly losing his balance, and ultimately refused to leave despite the owners' repeated demands that he do so. *911 Audio*; *Barnes Decl.*, ¶ 5(b) (authenticating 911 Audio); *Bousquette Decl.* ¶ 6,7,9; Exhibit 4, *Declaration of Christopher LaSalle* ¶ 5-8.

c.      Warren police officers Colin McCabe and Kimberly Teolis were dispatched

to the residence.  While the 911 caller was still on the phone with dispatch,

the officers arrived and found the suspect (later identified as the Plaintiff)

still in the back yard.  *911 Audio*; *Barnes Decl.*, ¶ 5(b) (authenticating 911

Audio); Exhibit 5, *Declaration of Colin McCabe*, ¶¶ 4-5; Exhibit 6, *B&E*

*Case Report*, Exhibit 7, *Declaration of Daniel Bradley*, ¶¶ 2, 3(a)

(authenticating B&E Case Report); *Bousquette Decl.*, ¶ 10; *LaSalle Decl.*,

¶ 9.

d.      Officers approached the Plaintiff at the driveway gate, in full view of the

homeowner, and began to question him.  *LaSalle Decl.*, ¶¶ 9-11; *B&E*

*Case Report*; *McCabe Decl.*, ¶ 5 and *Bradley Decl.*, ¶¶ 2, 3(a) (both

authenticating B&E Case Report).

e.      During questioning, Plaintiff admitted that he had become lost following a

party and believed that the home he was trying to enter belonged to a

coworker.  *B&E Case Report*, ¶¶ 2, 3; *McCabe Decl,.* ¶ 5 and *Bradley*

*Decl.*, ¶¶ 2, 3(a) (both authenticating B&E Case Report).

f.      After being identified by the homeowners, Plaintiff walked with the officers

to their patrol car without incident. *Bousquette Decl.,* ¶¶ 13-15; *LaSalle*

*Decl.,* ¶¶ 12-15.

g.      On video, Plaintiff admits to officers that he was coming from a party,

became lost, and had fallen several times – presumably due to being

under the influence.   Exhibit 8, *Scout Car Backseat Video*, 6:43:37-

6:44:10; *McCabe Decl.*, ¶¶ 6-9 and *Barnes Decl.*, ¶ 5(a) (both authenticating video).

h.   Although clear from the backseat video that the officers intended to give Plaintiff a ride home, he was ultimately arrested for disorderly conduct after being unable to give correct contact information for his grandmother, who he claimed to live with in Roseville, Michigan (an adjacent community to the east of the City). *Id.*; *Backseat Video,* 6:41:26-6:42:52.

i.   Plaintiff submitted to the arrest without incident – allowing handcuffs to be placed on him while still seated in the patrol car – and was taken to the City's jail. *Id.*; *Backseat Video,* 6:44:56-6:45:45.

j.   Plaintiff was then booked into the City's jail and photographed. Exhibit 9, *Booking Photographs*; *Bradley Decl.*, ¶¶ 2, 3(d) (authenticating Booking Photographs).

k.   Some time after booking, Plaintiff started a fight by punching another inmate, Taylor Monarch, in the mouth. Monarch then punched Plaintiff in the face, giving him a bloody nose, and decided not to press charges against Plaintiff. Exhibit 10, *Assault Case Report*; Exhibit 11, *Alleged Injured Prisoner Report on Plaintiff*; Exhibit 12, *Alleged Injured Prisoner Report on Monarch;* Exhibit 13, *Monarch's Waiver*; Exhibit 14, *Jail Video from Outside of Cell,* 9:32:15-9:36:26; Exhibit 15, *Declaration of David Vandelinder,* ¶¶ 4-6 (authenticating Assault Case Report and Jail Video); Exhibit 16, *Declaration of Daniel Novak,* ¶¶ 3-6 (authenticating alleged

injured prisoner reports); *Barnes Decl.* ¶ 5(c) (authenticating Jail Video); *Bradley Decl.,* ¶¶ 2-3 (authenticating records).

l.    After jail personnel broke up the fight, Plaintiff was moved to a segregated cell.  Later, unable to post bond following his arraignment, Plaintiff was transferred to the Macomb County Jail.   *Jail Video, 9:35:55-9:36:23*; *Assault Case Report; Vandelinder Decl.,* ¶¶ 4-6 (authenticating Assault Case Report and Jail Video); *Barnes Decl.* ¶ 5(c) (authenticating Jail Video).

5.    Based upon the foregoing evidence, and contrary to Plaintiff's claims, there was no force of any kind used on the Plaintiff incident to his arrest.

6.    Further, the video and photographic evidence show that Plaintiff did not have any visible injuries at the time of his arrest and booking, and thus, his alleged injuries are attributable to the fight he started at the City's jail.

7.    This matter must be dismissed under Fed. R. Civ. P. 12(b)(6) on the basis of qualified immunity because Plaintiff's complaint (a) does not establish any violation of a clearly-established constitutional right, (b) does not establish that the Defendant officers' actions were objectively unreasonable, (c) does not identify specific policies and practices that showed manifest indifference by the City to the use of excessive force by its police officers, and (d) fails to show that the City failed to adequately train or supervise its officers as to the use of force, or otherwise show this was the moving force behind the alleged constitutional violation to justify imposing liability.

8.      Further, video and other credible and unbiased evidence (including Plaintiff's own admissions on that video) blatantly contradicts Plaintiff's version of the facts in such a compelling manner that no reasonable jury could believe Plaintiff's claims. *Scott v. Harris*, 550 U.S. 372, 380-381, 127 S. Ct. 1769 (2007).

9.      Alternatively, based upon the evidence summarized above, there are no genuine issues of material fact in dispute in this case and Defendants are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

10.      This motion is supported by the accompanying Brief in Support filed contemporaneously herewith.

11.      Despite reasonable efforts to discuss this motion in accordance with Local Rule 7.1, concurrence in the relief sought in this motion was not given.

WHEREFORE, Defendants request that this Court dismiss this suit with prejudice, or alternatively grant summary judgment to Defendants, and award Defendants their costs and attorneys' fees and such other relief the Court deems appropriate.

Respectfully submitted,

BERRY MOORMAN, P.C.

/s/ Randolph T. Barker
Mark E. Straetmans (P29158)
Randolph T. Barker (P62604)
Andrea M. Pike (P74755)
Attorneys for Defendants
535 Griswold, Suite 1900
Detroit, MI 48226
(313) 496-1200
mstraetmans@berrymoorman.com
rbarker@berrymoorman.com
apike@berrymoorman.com

Dated:  November 6, 2015

{00203480;v1 }                                                     6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA ALDRIDGE,

      Plaintiff,

v.

CITY OF WARREN, COLIN MCCABE,
and KIMBERLY TEOLIS, in their official
and individual capacities,

      Defendants.

Case No. 5:15-cv-12366
Hon. Judith E. Levy
Mag. Judge Elizabeth A. Stafford

| CHRISTOPHER TRAINOR & ASSOC. | BERRY MOORMAN P.C. |
|---|---|
| CHRISTOPHER J. TRAINOR (P42449) | MARK STRAETMANS (P29158) |
| AMY J. DEROUIN (P70514) | RANDOLPH T. BARKER (P62604) |
| SHAWN C. CABOT (P64021) | ANDREA M. PIKE (P74755) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 9750 Highland Road | 535 Griswold, Suite 1900 |
| White Lake, MI 48386 | Detroit, MI 48226 |
| (248) 886-8650 | (313) 496-1200 |
| amy.derouin@cjtrainor.com | mstraetmans@berrymoorman.com |
| shawn.cabot@cjtrainor.com | rbarker@berrymoorman.com |
| | apike@berrymoorman.com |

**BRIEF IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) OR
ALTERNATIVELY FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56**

# TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUES PRESENTED ................................................ii

CONTROLLING AUTHORITIES ........................................................................iii

INDEX OF AUTHORITIES ................................................................................iv

INTRODUCTION ........................................................................................... 1

I.    LEGAL STANDARDS ............................................................. 4

II.   ARGUMENT ........................................................................ 6

    A.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ............. 6

        1.    Force Used Not "Clearly Established" as Excessive ................. 8
        2.    Conduct of Officers Objectively Reasonable ............................ 9
        3.    Plaintiff Failed to State a Claim Against the City of Warren ..... 11

    B.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
          WHERE NO CONSTITUTIONAL VIOLATION WAS
          ESTABLISHED .................................................................... 12

CONCLUSION ........................................................................... 13

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  Whether Defendants are entitled to qualified immunity where Plaintiff has failed to demonstrate a constitutional violation and failed to show how the conduct of the Defendant officers was objectively unreasonable.

    Defendants Answer:          Yes.

    Plaintiff Answers:          No.


2.  Whether Plaintiff failed to state a claim against Defendant City of Warren where the Plaintiff has merely pled conclusory allegations that the City does not adequately train its police officers and has an official policy or custom that caused the Plaintiff to be deprived of a federally protected right.

    Defendants Answer:          Yes.

    Plaintiff Answers:          No.

## <u>CONTROLLING AUTHORITIES</u>

*Ashcroft* v. *al-Kidd*, 131 S. Ct. 2074, 2084; 179 L. Ed. 2d 1149 (2011) ............. 7,9-10

*Ashcroft* v. *Iqbal*, 556 U.S. 662, 678; 129 S. Ct. 1937 (2009) .................................... 5

*Burgess* v. *Fischer*, 735 F.3d 462 (6th Cir. 2013) ..................................................... 12

*Harlow* v. *Fitzgerald*, 457 U.S. 800, 818; 102 S. Ct. 2727 (1982) ............................. 7

*Monell* v. *Dep't of Social Servs, of N.Y.*, 436 U.S. 658, 694; 98 S. Ct. 2018
    (1978) .......................................................................................... 11

*Saucier* v. *Katz*, 533 U.S. 194, 201-02; 121 S. Ct. 2151 (2001)................................ 7

*Scott* v. *Harris*, 550 U.S. 372, 380-381; 127 S. Ct. 1769 (2007) .................... 5,6,8,12

# INDEX OF AUTHORITIES

## Cases

*Anderson* v *Creighton*, 483 U.S. 635, 640; 107 S. Ct. 3034 (1987) ........................... 8

*Anderson* v. *Liberty Lobby*, 477 US 242, 252; 106 S. Ct. 2505 (1986) ..................... 6

*Ashcroft* v. *al-Kidd*, 131 S. Ct. 2074, 2084; 179 L. Ed. 2d 1149 (2011) ............. 7,9-10

*Ashcroft* v. *Iqbal*, 556 U.S. 662, 678; 129 S. Ct. 1937 (2009) ................................ 5

*Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570; 127 S. Ct. 1955 (2007) ..................... 4

*Burgess* v. *Fischer*, 735 F.3d 462 (6th Cir. 2013) ...................................... 12

*Cass* v. *City of Dayton*, 770 F.3d 368, 374 (6th Cir. 2014) ........................... 7

*Causey* v. *City of Bay City*, 442 F.3d 524, 528 n.2 (6th Cir. 2006)........................... 7

*Celotex Corp.* v. *Catrett*, 477 U.S. 317, 327; 106 S. Ct. 2548 (1986) ...................... 6

*City & Cnty. of San Francisco* v. *Sheehan*, 135 S. Ct. 1765, 1774;
     191 L. Ed. 2d 856 (2015) .............................................................. 10

*City of Los Angeles* v. *Heller*, 475, U.S. 796, 799; 106 S. Ct. 1571 (1986).............. 13

*Collins* v.  *Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ......... 5

*Connick* v. *Thompson*, 131 S. Ct. 1350, 1359; 179 L. Ed. 2d 417 (2011)................. 11

*Harlow* v. *Fitzgerald*, 457 U.S. 800, 818; 102 S. Ct. 2727 (1982) .............................. 7

*Koubriti* v *Convertino*, 593 F.3d 459, 467 (6th Cir. 2010).......................................... 11

*Lenning* v *Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001)................. 6

*Marvin* v *City of Taylor*, 509 F. 3d 234, 244 (6th Cir. 2007) ....................................... 7

*Miller* v. *Administrative Office of the Courts*, 448 F.3d 887, 893-896 (6th Cir.
     2006)     ................................................................................. 7,10

*Monell* v. *Dep't of Social Servs, of N.Y.*, 436 U.S. 658, 694; 98 S. Ct. 2018
     (1978)     ................................................................................. 11

*Pearson* v. *Callahan*, 555 U.S. 223, 231; 129 S. Ct. 808 (2009)................................ 7

*Saucier* v. *Katz*, 533 U.S. 194, 201-02; 121 S. Ct. 2151 (2001)................................. 7

*Scott* v. *Harris*, 550 U.S. 372, 380-381; 127 S. Ct. 1769 (2007) .................... 5-6,8,12

*Sonnier* v. *State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007)............ 5

*Southland Sec. Corp.* v. *INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir.
    2004)            ................................................................................................5,11

*Spiller* v. *City of Texas City*, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997) .......... 12

*Spivey* v. *Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) ............................................ 5

*Standifer* v. *Lacon*, 587 F. App'x 919, 920 (6th Cir. 2014) ......................................... 6

*Taylor* v. *Barkes*, 135 S. Ct. 2042, 2044; 192 L. Ed. 78 (2015)................................ 10

## Court Rules

42 U.S.C. §1983    ........................................................................................... 1,12

Fed. R. Civ. P. 12(b)(6)................................................................................. 1,4,5,12

Fed. R. Civ. P. 56    ......................................................................................... 6,13

## INTRODUCTION

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, against the City of Warren, a municipality in Macomb County, Michigan, Colin McCabe and Kimberly Teolis, who at the time of the incidents complained of were police officers for the City of Warren.[1]  This case arises from the alleged use of excessive force against Plaintiff during his July 5, 2013 arrest for disorderly conduct.[2]  Plaintiff contends that the alleged use of force violated the Fourth Amendment, and joins the City of Warren, alleging generally that it had unidentified policies and practices that showed manifest indifference to the use of excessive force by its police officers, and failed to adequately train or supervise its officers as to the use of force.

Defendants move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) because (a) Plaintiff has failed to state a claim, (b) Defendants are entitled to qualified immunity, (c) any force used on the Plaintiff was objectively reasonable, and (d) the general allegations against the City of Warren are factually insufficient to state a claim. In addition to seeking dismissal, Defendants are entitled to summary judgment of Plaintiff's Complaint because the evidence, which includes audio and video recordings and eyewitness testimony, establish that Plaintiff's claims are fabricated.

## FACTS

On July 5, 2013, homeowner Sharon LaSalle (now Sharon Bousquette – "Sharon"), was awakened at approximately 6:30 a.m. by her dog barking and a man (later identified as the Plaintiff) pounding on the side of her house, trying to open the side door.  *Bousquette Decl.*, ¶¶ 4, 5.  Sharon awoke her then husband, Christopher

---

[1] Although still employed by the City of Warren Police Department, Officer Teolis remains on medical leave after suffering a closed-head injury in an accident while on duty.
[2] Plaintiff pled guilty to this charge on July 16, 2013.

LaSalle ("Chris"), and his son to confirm they did not know Plaintiff. *Bousquette Decl.*, ¶ 6; *LaSalle Decl.*, ¶¶ 4-5.  At the time, Plaintiff was disheveled, stumbling, falling, slurring his words and calling out to someone who did not reside there. *Bousquette Decl.*, ¶ 9; *LaSalle Decl.*, ¶ 8. After they concluded that they did not know the Plaintiff, Sharon told him, "I do not know you", "you need to go away", and that she would call the police if he did not leave. *Bousquette Decl.*, ¶ 7, 8.  Plaintiff then walked a few houses down but quickly returned, refusing to leave, forcing Sharon to call police. *Id.,* ¶ 8.

Officers McCabe and Teolis were dispatched to the LaSalle home for a breaking and entering in progress by a "white male in his 20's wearing a white tank top, shorts, and no shoes." *911 Audio*; *Declaration of John Barnes*, ¶ 5(b) (authenticating 911 Audio); *McCabe Decl.*, ¶¶ 4, 5; *B&E Case Report*; *Bradley Decl.,* ¶ 5(b) (authenticating B&E Case Report).  Upon their arrival, they saw the person fitting that description – the Plaintiff – still on the LaSalle property and who was immediately identified by Sharon as the person trying to get inside her home. *B&E Case Report,* ¶ 1; *McCabe Decl.,* ¶ 5 (authenticating B&E Case Report); *Bousquette Decl.*, ¶ 13.  In Chris's plain view, the officers approached Plaintiff (who was at that time in the driveway beyond the backyard gate) and began to talk to him. *LaSalle Decl.*, ¶¶ 9-12.  Plaintiff, who had slurred speech, glossy and bloodshot eyes, and unsteady balance,  told the officers that he believed that one of his coworkers lived at the LaSalle home. *B&E Case Report,* ¶ 2; *McCabe Decl.,* ¶ 5 and *Bradley Decl.,* ¶ 5(b) (both authenticating B&E Case Report). Without incident, Plaintiff agreed to walk out toward the front of the property. *Id.; Bousquette Decl.*, ¶¶ 12, 13; *LaSalle Decl.*, ¶ 12.   Chris and Sharon met the officers

and the Plaintiff at their front porch, again identifying Plaintiff as the person trying to break into their home, and confirming that they did not know him. *Id.*

Intent on giving him a ride home, the officers then walked Plaintiff to their patrol car, which was parked at the end of the driveway.  Plaintiff was asked to sit in the backseat and provide information about who he was and where he lived.  *Bousquette Decl.,* ¶ 14; *B&E Case Report,* ¶ 3; *McCabe Decl.,* ¶ 5 and *Bradley Decl.,* ¶ 5(b) (both authenticating B&E Case Report).  Plaintiff told the officers that he lived in a neighboring community with his grandmother, and mumbled a telephone number.[3]  *Backseat Video,* 6:41:26-6:43:27; *McCabe Decl.,* ¶¶ 6-9 and *Barnes Decl.,* ¶ 5(a) (both authenticating video).  The backseat video captures the interaction, during which Officer Teolis asks Plaintiff, "were you at a party down in Warren?" to which Plaintiff responded, "yeah, all the time."  Plaintiff further stated, "I kept walking around and falling and falling and falling and falling."  *Id.; Backseat Video,* 6:43:37-6:44:10.  Unable to contact Plaintiff's grandmother, the officers arrested Plaintiff for disorderly conduct and placed him in handcuffs.[4]  *Id.; Backseat Video,* 6:44:09-6:45:45.

Plaintiff was then transported to the City of Warren Police Department's jail and booked.  Like the video from the backseat of the patrol car, Plaintiff's booking photographs show that he did not have any visible injuries.  *Booking Photographs; Bradley Decl.,* ¶ 3(d) (authenticating photographs).  Thereafter, other than perhaps for

---

[3] Roseville, where Plaintiff claimed at the time to be living, is several miles away from the LaSalle home, which is in south Warren.  Contrary to the allegations in the Complaint (that he was on his normal route to the bus stop), Plaintiff also admitted to officers that he became lost after leaving a party.

[4] Only then was Plaintiff placed in handcuffs and, as shown in the video, Plaintiff peacefully complied with the officer's directive to place his hands behind his back for this purpose.

court proceedings, Officer McCabe and Officer Teolis had no further contact with the Plaintiff.

While in his cell at the Warren Jail, on July 5, 2013 at 9:35 a.m., Plaintiff started a fight by punching another inmate, Taylor Monarch, in the mouth.  Monarch defended himself by punching Plaintiff in the face, resulting in a bloody nose.  *Assault Case Report*; *Alleged Injured Prisoner Report on Plaintiff*; *Alleged Injured Prisoner Report on Monarch; Vandelinder Decl., ¶¶ 4-6* (authenticating Assault Case Report); *Novak Decl., ¶¶ 3-6* (authenticating alleged injured prisoner reports); *Bradley Decl., ¶¶ 2-3* (authenticating records).  Jail personnel broke up the fight and moved Plaintiff – the aggressor – to a segregated cell pending his transfer to the Macomb County Jail.  *Id.; Jail Video from Outside of Cell,* 9:32:15-9:36:26; *Vandelinder Decl., ¶ 7* and *Barnes Decl., ¶ 5(c)* (both authenticating Jail Video).  Taylor Monarch, the victim declined to press charges.  *Monarch Waiver; Bradley Decl., ¶¶ 2, 3(g)* (authenticating waiver). Upon transfer to the Macomb County Jail, Plaintiff claims to have received hospital treatment for injuries suffered during the fight and as a consequence of his falls following the party he attended.  Despite the evidence proving that these injuries had different causes attributable only to the Plaintiff, the Plaintiff falsely accuses Officers McCabe and Teolis of inflicting them.

## I.      LEGAL STANDARDS

To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570; 127 S. Ct. 1955 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S. Ct. 1937 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

When considering a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the Court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

In ruling on a motion to dismiss under Rule 12(b)(6), the Court generally cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Likewise, evidence that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Id.* Further, for purposes of a 12(b)(6) motion, a court should rely on the video record when the plaintiff's version of the facts blatantly contradict it and no reasonable jury could believe it. See *Scott v. Harris*, 550 U.S. 372, 380-381; 127 S. Ct.

{00203481;v1 }                                          5

1769 (2007).  In other words, "where the police dash-cam video . . . depicts all of the genuinely disputed facts," *Standifer v. Lacon*, 587 F. App'x 919, 920 (6th Cir. 2014) – the Court must "view[] the facts in the light depicted by the videotape[s]." *Scott*, 550 U.S. at 381.

Unlike a 12(b)(6) motion, a motion brought under FRCP 56 can be supported with affidavits, depositions, or other factual material. *Anderson v Liberty Lobby,* 477 US 242, 252; 106 S. Ct. 2505 (1986). "… The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. …"  Fed. R. Civ. P. 56.  The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp v Catrett*, 477 US 317, 327; 106 S. Ct. 2548 (1986) (internal quotes omitted).  A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v Commercial Union Ins Co*, 260 F.3d 574, 581 (6th Cir. 2001).  The Supreme Court has also instructed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380 (2007).

## II.   ARGUMENT

### A.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Public officials are entitled to qualified immunity in cases seeking civil damages if their conduct does not violate "clearly established statutory or constitutional rights of

which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231; 129 S. Ct. 808 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818; 102 S. Ct. 2727 (1982)). Qualified immunity is intended to protect public officials from unnecessary interference with their duties, while also holding them accountable "when they exercise power irresponsibly." *Id.* The qualified immunity analysis entails two general steps, which can be considered in any order. *Pearson*, 555 U.S. at 236. In one step, the court determines whether "the facts alleged show the officer's conduct violated a constitutional right"; in the other, it determines whether the right was "clearly established" at the time of the events. *Cass v. City of Dayton*, 770 F.3d 368, 374 (6th Cir. 2014) (citing *Saucier v. Katz*, 533 U.S. 194, 201-02; 121 S. Ct. 2151 (2001)). If one step fails, the inquiry stops, the § 1983 claim fails as a matter of law, and the officers do not need qualified immunity. *Marvin* v. *City of Taylor*, 509 F. 3d 234, 244 (6th Cir. 2007).

A third step is often employed in the Sixth Circuit to inquire into "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Miller v. Administrative Office of the Courts*, 448 F.3d 887, 893-896 (6th Cir. 2006); *Causey v. City of Bay City*, 442 F.3d 524, 528 n.2 (6th Cir. 2006). When the law is not sufficiently clear such that a reasonable officer would be on notice that his conduct is clearly unlawful, qualified immunity is appropriate. *Id.* at 202. In deciding whether the right was clearly established, the Supreme Court has cautioned lower courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084; 179 L. Ed. 2d 1149 (2011). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful,

{00203481;v1 }                                                7

but it is to say that in the light of pre-existing law the unlawfulness must be apparent."
*Anderson v. Creighton*, 483 U.S. 635, 640; 107 S. Ct. 3034 (1987)).

Even though a factual account presented in a complaint might otherwise survive a motion to dismiss, a motion to dismiss is properly granted on qualified immunity grounds where video evidence contradicts the plaintiff's claims.  See *Scott*, 550 U.S. 372 (2007).   In *Scott*, the Supreme Court found that a police officer was entitled to qualified immunity in a Fourth Amendment excessive force claim.  In so doing, the Court rejected the plaintiff's factual account due to the existence of a videotape that captured the relevant events and "quite clearly contradict[ed]" the plaintiff's story such that "no reasonable jury could believe it." *Id.* at 378, 380.

### 1.  Force Used Not "Clearly Established" as Excessive

Resolution of the first prong is achieved by simple logic: where the evidence shows that no force whatsoever was used on the plaintiff, there certainly can be no finding of excessive force.

The 911 recording in this case makes clear that Officers McCabe and Teolis were dispatched to the LaSalle residence in response to the homeowner's complaint that Plaintiff was attempting to break and enter into her home.  *911 Audio; Barnes Decl.,* ¶ 5(b) (authenticating 911 Audio).  This same recording shows that Plaintiff was still trespassing when officers arrived. *Id.*  Chris, the homeowner, declares that he observed the entire interaction between Plaintiff and the officers: there was only conversation between them, and the officers did not so much as place their hands on Plaintiff when Plaintiff was led to the scout car parked in front of the driveway.  *LaSalle Decl.,* ¶¶ 11-15.  Sharon also declares that Plaintiff walked to the scout car without the officers' help;

one of the officers said "watch your head" as Plaintiff was getting into the car; she did not observe the police use any force; and all of Plaintiff's claims regarding being picked up, slammed to the ground, dragged, and punched are false. *Bousquette Decl.,* ¶ 14-15.   The video of the backseat of the scout car then shows that Plaintiff sat in the backseat while the officers expressed a desire to simply take him home. *Backseat Video; McCabe Decl.,* ¶¶ 6-9 and *Barnes Decl.,* ¶ 5(a) (both authenticating video). When officers could not reach Plaintiff's grandmother with the information provided, it was only then that Plaintiff was arrested for disorderly conduct, placed in handcuffs, and taken to jail without incident. *Id.* On video and in his booking photographs, Plaintiff shows no signs of visible injury, which unquestionably would be present had the officers beaten and dragged him in the manner he falsely alleges in his Complaint. *Id.; Booking Photographs; Bradley Decl.,* ¶ 3(d) (authenticating Booking Photographs).

The evidence is overwhelming that no force was used and a reasonable jury applying the law of our circuit could only conclude that the officers were acting permissibly under the Constitution. Plaintiff's version of the facts does not change this conclusion because under *Scott,* his story amounts to visible fiction in light of the scout car video and other evidence that paints the true picture of his interaction with the police.

## 2.    Conduct of Officers Objectively Reasonable

The second prong (and also the third) of the qualified immunity analysis are also resolved in favor of the Defendants. Although the inquiry ends and the plaintiff's case fails where no constitutional violation can be established from the evidence, *Ashcroft v.*

*al-Kidd*, 131 S. Ct. at 2080, that same evidence shows that the officers' actions in this case were objectively reasonable to warrant dismissal on qualified immunity grounds.

The cases decided by our Supreme Court firmly establish that qualified immunity is an exacting standard that gives officers lots of leeway, requiring their conduct to violate clearly established law to overcome the immunity defense. *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774; 191 L. Ed. 2d 856 (2015); see also *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 192 L. Ed. 78 (2015). Existing case law, therefore, must put the precise question "beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. at 2083.

Here, the officers were presented with a Plaintiff who, during the early morning hours of July 5, 2015, had awakened a family by pounding on the side door of their home, trying to get in, and all the while refusing to leave.  This person, who appeared to be under the influence of drugs or alcohol, was admittedly lost following a party he had attended and was falling over frequently along the way to the LaSalle residence.  Rather than immediately exercise their rights as law enforcement officers to apprehend Plaintiff and arrest him for attempted breaking and entering, trespass, and disorderly conduct, their conversation with him and the homeowners justified a different course: offer Plaintiff a ride home – without being arrested – so long as they could reach his grandmother, with whom he claimed to live with.  Only after failed attempts to reach Plaintiff's grandmother was he arrested and taken to jail, and only then on a petit misdemeanor offense of disorderly conduct.

Plaintiff cannot point to any "clearly established" law that the Defendants supposedly violated given the facts above, and cannot point to any evidence that the officers were not objectively reasonable. *Miller*, 448 F.3d at 893-896.  To the contrary,

the officers' conduct at the time of arrest was so objectively reasonable that this case gives real meaning to the phrase "no good deed should go unpunished."   Plaintiff cannot overcome Defendants' entitlement to dismissal on qualified immunity grounds.

### 3.    Plaintiff Failed to State a Claim Against the City of Warren

The conclusory allegations in the Complaint regarding officer training and City policies are insufficient to state a claim against the City, and requires dismissal of those claims.   *Southland*, 365 F.3d at 361. A municipality may be held liable for the deprivation of rights guaranteed by the Constitution or federal law only if the deprivation was the result of an official policy.   See *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 694; 98 S. Ct. 2018 (1978). *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010). "[U]nder § 1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 131 S. Ct. 1350, 1359; 179 L. Ed. 2d 417 (2011) (internal citation and quotation marks omitted). Instead, a municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's "official policy", such that the municipality's promulgation or adoption of the policy can be said to have "cause[d]" one of its employees to violate the plaintiff's constitutional rights. *Monell*, 436 U.S. at 692. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359. Thus, to properly allege a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision;

{00203481;v1 }                                                11

or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013).  "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." See, e.g., *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

Here, the allegations against the City are merely conclusory and fail to meet even one of the *Burgess* requirements for stating a claim against a municipality.  Not one policy, practice, or policy maker has been identified.  Conversely, the Warren Police Department has specific policies regarding the use of force and officers are routinely trained on those protocols.  Exhibit 17, *Warren Police Department General Order on Non-Lethal Force*.  Dismissal of the Complaint against the City is warranted on that basis.  Fed. R. Civ. P. 12(b)(6).

## B.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WHERE NO CONSTITUTIONAL VIOLATION WAS ESTABLISHED

The evidence in this case equally justifies entry of summary judgment in favor of the Defendants.  There are no genuine issues of material fact in dispute that Plaintiff was lawfully arrested for creating a disturbance, was engaged in criminal activity at the time of his arrest, and no force was necessary or employed to effect the arrest. Plaintiff's version of the facts is blatantly contradicted by the record, such that no reasonable jury could believe it, and thus cannot be adopted by the Court when ruling on a motion for summary judgment. *Scott*, 550 U.S. at 380 (2007).

Further, summary judgment in favor of the City on the Plaintiff's claims that its policies or customs gave rise to a constitutional violation under 42 U.S.C. § 1983 is also

appropriate in the absence of a constitutional violation by these officers. See *City of Los Angeles v. Heller*, 475 U.S. 796, 799; 106 S. Ct. 1571 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the [municipality] might have authorized [unconstitutional conduct] is quite beside the point.").

Defendants are entitled to judgment as a matter of law and an order of dismissal with prejudice. Fed. R. Civ. P. 56.

<u>CONCLUSION</u>

WHEREFORE, Defendants request that this Court dismiss this suit with prejudice, or alternatively grant summary judgment to Defendants, and award Defendants their costs and attorneys' fees and such other relief the Court deems appropriate.

Respectfully submitted,

BERRY MOORMAN, P.C.

*/s/ Randolph T. Barker*
Mark E. Straetmans (P29158)
Randolph T. Barker (P62604)
Andrea M. Pike (P74755)
Attorneys for Defendants
535 Griswold, Suite 1900
Detroit, MI 48226
(313) 496-1200
mstraetmans@berrymoorman.com
rbarker@berrymoorman.com
apike@berrymoorman.com

Date:  November 6, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2015, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

BERRY MOORMAN, P.C.

*/s/ Randolph T. Barker*
Mark E. Straetmans (P29158)
Randolph T. Barker (P62604)
Andrea M. Pike (P74755)
Attorneys for Defendants
535 Griswold, Suite 1900
Detroit, MI 48226
(313) 496-1200
mstraetmans@berrymoorman.com
rbarker@berrymoorman.com
apike@berrymoorman.com